UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEEDOM MANAGEMENT GROUP, INC.
and PAYMAXX PRO, LLC,

        Plaintiffs,

v.                     CASE NO.: 8:11-cv-2108-T-33TBM

SUSAN PERLMUTTER and SIGMA
PAYMENT PROCESSING, INC.,

        Defendants.
_____/

## ORDER

    This cause is before the Court pursuant to Plaintiffs'
Joined Motion to Dismiss the Counterclaims for Failure to
State a Claim and Strike Affirmative Defenses, which was filed
on March 20, 2012. (Doc. # 73).  Defendant Susan Perlmutter
filed a Response in Opposition to the Motion (Doc. # 87) on
April 16, 2012.  For the reasons that follow, the Court grants
in part and denies in part the Motion to Dismiss and denies
the Motion to Strike Affirmative Defenses.

## I.   Background

    Plaintiffs initiated this action against their former
employee, Susan Perlmutter, on September 16, 2011, asserting
the following complaint counts: misappropriation of trade
secrets (count one); breach of contract (count two); fraud in
the inducement (count three); breach of fiduciary duty (count
four); constructive fraud (count five); tortious interference

with a business relationship (count six); temporary and permanent injunctive relief (count seven) and civil conspiracy (count eight).

Defendant asserted five counterclaims against Plaintiffs: (1) breach of contract; (2) unjust enrichment; (3) tortious interference with advantageous business and contractual relationships and future relationships; (4) bad faith; and (5) fraud in the inducement. (Doc. # 68). In addition, Defendant asserted various affirmative defenses. Plaintiffs seek to dismiss Defendant's counterclaims and strike Defendant's affirmative defenses.

## II. <u>Legal Standard</u>

### A. <u>Motion to Dismiss</u>

A motion to dismiss a counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is evaluated in the same manner as a motion to dismiss a complaint. <u>Stewart Title Guar. Co. v. Title Dynamics, Inc.</u>, No. 2:04-cv-316-FtM-33SPC, 2005 WL 2548419, at *1 (M.D. Fla. Oct. 11, 2005). A counterclaim must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in the counterclaim as

true and construe them in the light most favorable to the counterclaim plaintiff.  See <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1269 (11th Cir. 2009).

"While a [counterclaim] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations and quotations marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  <u>Id.</u> (internal citations omitted).

A counterclaim plaintiff must plead enough facts to state a plausible basis for the claim.  <u>Id.</u>; <u>James River Ins. Co. v. Ground Down Eng'g, Inc.</u>, 540 F.3d 1270, 1274 (11th Cir. 2008) ("To survive dismissal, the [counterclaim's] allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's [counterclaim] should be dismissed."). Additionally, "the tenet that a court must accept as true all of the allegations contained in a [counterclaim] is

3

inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

## B.   <u>Motion to Strike</u>

Affirmative defenses are subject to the general pleading requirements of Rule 8.  Specifically, Rule 8(b)(1)(A), Fed.R.Civ.P., requires that a party "state in short plain terms its defenses to each claim asserted against it." Affirmative defenses are also evaluated against the touchstone of Rule 12(f), Fed.R.Civ.P., which states, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although the Court has broad discretion in ruling on a motion to strike, such motions are disfavored due to their "drastic nature." <u>Royal Ins. Co. of Am. v. M/Y Anastasia</u>, No. 95-cv-60498/RV, 1997 U.S. Dist. LEXIS 15595, at *10 (N.D. Fla. Jan. 30, 1997).  Further, as stated in <u>Florida Software Systems v. Columbia/HCA Healthcare Corp.</u>, No. 8:97-cv-2866-T-17B, 1999 U.S. Dist. LEXIS 15294, at *4 (M.D. Fla. Sept. 16, 1999), "An affirmative defense will be held insufficient as a matter of law only if it appears that the Defendant cannot succeed under any set of facts which it could prove."

4

In addition, courts may strike a defense if it has "no possible relation to the controversy, may confuse the issues, or may cause prejudice to one of the parties." Ayers v. Consol. Constr. Servs. of SW Fla., Inc., 2:07-cv-123, 2007 U.S. Dist. LEXIS 86596, at *2 (M.D. Fla. Nov. 26, 2007). "To the extent that a defense puts into issue relevant and substantial legal and factual questions, it is sufficient and may survive a motion to strike." Fla. Software Sys., 1999 U.S. Dist. LEXIS 15294, at *4.

### III.   Analysis

In this diversity case, the Court applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. Tech. Coating Apps., Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). Furthermore, this Court must apply Florida law in the same manner that the Florida Supreme Court would apply it. Brown v. Nichols, 8 F.3d 770, 773 (11th Cir. 1993).

#### A.   Motion to Dismiss Counterclaims

##### 1.   Breach of Contract

Defendant Perlmutter alleges that prior to joining Leedom, she was a shareholder of MBK, Inc., and one of Leedom's competitors. (Doc. # 68 at 86). MBK is a "sub-ISO"

in the payment processing industry. Id. at ¶ 87. Leedom
solicited Perlmutter to leave MBK and become a Leedom employee
and requested that Perlmutter bring her book of business to
Leedom. Id. at ¶ 88. In their negotiations, Leedom
misrepresented to Perlmutter that Leedom was a registered
independent sales organization "ISO," rather than a "sub-ISO"
in the payment processing business. Id. at ¶ 88. As explained
in the counterclaim, "an ISO (as compared to a sub-ISO) had a
higher, potential margin between revenue and costs, relative
to what merchants were actually charged for services." Id. at
¶ 90. Perlmutter relied upon the advantages associated with
Leedom's status as an ISO, such as "cutting out the middle
man" and "more attractive pricing" when making the decision to
join Leedom and relinquish her shares of MBK. Id. at ¶¶ 90,
102.

Unbeknownst to Perlmutter, however, "Leedom was notified
before the end of December 2010 that their status as an ISO
was being terminated." Id. at 91. Perlmutter also alleges
that Leedom misrepresented Leedom's ability to process certain
ACH transaction and their PCI compliance.[1] Based on Leedom's

---

[1] According to the counterclaim, Leedom's PCI compliance
refers to Leedom's processing business being fully compliant
with all required payment card industry standards. (Doc. # 68
at ¶ 93). Although not defined in the counterclaim, "ACH" or
automated clearing house transactions refers to an electronic

representations that Leedom could service her book of business more profitably than MBK could, Perlmutter entered into an employment contract with Leedom on February 14, 2011. Id. at 118.

Perlmutter contends that she "needed a fully PCI compliant organization in order to process her book of business." Id. at 101. Perlmutter generally alleges that she paid valuable consideration to release her book of business from MBK so she could furnish it to Leedom, and that she lost the benefit of the bargain because, in fact, Leedom could not process her book of business as promised. In addition, Perlmutter contends that she was not paid the amounts promised under the contract (the offer letter). Specifically, she argues that she was not paid her $12,500 monthly bonus from her first month of employment (due March 15, 2011). Id. at ¶ 119.

In order to state a claim for breach of contract, Perlmutter must establish: (1) the existence of a valid contract; (2) material breach thereof; and (3) damages flowing from the breach. Murciano v. Garcia, 958 So. 2d 423, 423 (Fla. 3d DCA 2007).

---

network for financial transactions.

Perlmutter's counterclaim for breach of contract is sufficient to withstand Plaintiffs' Motion to Dismiss. Perlmutter alleges that she entered into a contract with Leedom--the offer letter--and that Leedom breached the contract by (1) misrepresenting Leedom's ISO status, PCI compliance, and ACH capability to Perlmutter and (2) by failing to pay Perlmutter monies due under the contract. Perlmutter has sufficiently alleged damages flowing from the breach in that she lost the benefit of the bargain because Leedom could not process her book of business as profitably as Leedom represented to Perlmutter and in that Leedom failed to pay promised compensation.

The Court rejects Leedom's argument that Perlmutter cannot maintain an action for breach of contract because Perlmutter cannot show that she performed her obligations under the contract. Here, looking solely at the counterclaim, the Court determines that Perlmutter has alleged performance of the contract by joining Leedom, furnishing her valuable book of business to Leedom, and by facilitating Leedom's establishment of relationships with entities such as U.S. Data Capture, PAI, and EFT Networks. (Doc. # 68 at ¶¶ 108-112). The Court also rejects Leedom's other arguments, including the argument that the alleged breach does not "go to the essence

of" the contract.  The Court determines that Perlmutter's allegations concerning breach are material and relate to the essence of the contract.  The Court accordingly denies the Motion to Dismiss as to Perlmutter's breach of contract counterclaim.

## 2.   Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must show that (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances it would be inequitable for the defendant to retain the benefit without paying for it.  Tooltrend, Inc. v. CMT Utensil, SRL, 198 F.3d 802, 805 (11th Cir. 1999).

As explained in Williams v. Wells Fargo Bank, No. 11-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011), "Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." Id. at *6 (internal citations and quotation marks omitted); See also Validsa, Inc. v. PDVSA Servs., 424 F. App'x 862, 873 (11th Cir. 2001)(affirming district court's dismissal of counterclaim for unjust enrichment due to the existence of an

9

express contract).  A party may "plead in the alternative for
relief under an express contract and for unjust enrichment"
but only when "one of the parties asserts that the contract
governing the dispute is invalid." Williams, 2011 WL 4901346,
at *6.

Here, Perlmutter has challenged the validity of the
contract.  Specifically, she contends that the contract was
invalid from inception due to Leedom's fraudulent inducement
of Perlmutter to enter into the contract.  Accordingly, the
Court declines to dismiss the unjust enrichment counterclaim
on the basis of an express contract.

The essence of Perlmutter's unjust enrichment claim is
that Leedom misled her into relinquishing her book of business
to Leedom and then, after Leedom gained control over her book
of business, terminated Perlmutter.  Perlmutter adds that
"Plaintiffs reaped the benefit of processing the Book of
Business and Defendant's services without ever paying
Defendant for her stock liquidation with MBK, her forgiven
loan to MBK [in the amount of $64,000.00], or even her minimum
monthly bonus at Leedom." (Doc. # 68 at ¶ 140).

Although Plaintiffs assert that Perlmutter has enjoyed
the benefit of the bargain and has an adequate legal remedy

for the acts on which the unjust enrichment claim is predicated, the Court determines that these arguments are unavailing and prematurely asserted at this juncture. Based on the allegations contained within the counterclaim, Perlmutter satisfies the elements of the claim and has alleged facts sufficient to raise her right to relief above the speculative level. The Court accordingly denies the Motion to Dismiss as to Unjust Enrichment.

3. **Tortious Interference with Advantageous Business and Contractual Relationships and Future Relationships**

Under Florida law, "the elements of tortious interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001) (citation omitted). The interference must be not only intentional and unjustified but also direct. See Lawler v. Eugene Wuesthoff Mem'l Hosp. Ass'n, 497 So. 2d 1261 (Fla. 5th

11

DCA 1986).

The counterclaim contains succinct factual allegations satisfying each of these elements:

> Defendant had business or contractual relationships with all clients in her Book of Business. Plaintiffs were aware of the business and contractual relationships of Defendant with such clients to the extent that they sought to induce her to release such Book of Business from MBK. Plaintiffs misled Defendant as to their PCI compliance, their ACH process capability, their intention to compensate her for the Book of Business or her work, or their intention to service the Book of Business fairly. Plaintiffs' conduct interfered with such business or contractual relationships by, among other things, taking such Book of Business for its own and terminating Defendant. Plaintiff's actions were taken maliciously and with the intent to harm Defendant, and so justify an award of both damages and punitive damages.

(Doc. # 68 at ¶¶ 143-148).

Plaintiffs present fact-specific arguments concerning events after Perlmutter's termination and other matters extraneous to the allegations of the counterclaim in an effort to defeat the claim. However, these arguments are prematurely asserted at the Rule 12(b)(6) motion to dismiss stage. At this juncture, the Court determines that the tortious interference counterclaim survives the Motion to Dismiss.

4. <u>**Bad Faith**</u>

In Counterclaim four, Perlmutter seeks attorney's fees and costs under the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, et seq. Perlmutter describes her claim under the Act as a claim based on bad faith. Count one of Plaintiffs' complaint against Perlmutter alleges that Perlmutter violated the Act, alleging among other things that "Leedom's trade secrets were misappropriated by Perlmutter in violation of Fla. Stat. § 688.001." (Doc. # 1 at ¶ 31). Florida Statute § 688.005 states, "if a claim of misappropriation is made in bad faith . . ., the court may award reasonable attorney's fees to the prevailing party."

Perlmutter asserts that Plaintiffs are pursuing their Uniform Trade Secrets Act action against her in bad faith and accordingly, she requests attorney's fees and costs. Plaintiffs provide no legal support to buttress their arguments in support of the dismissal of Perlmutter's request for attorney's fees pursuant to the Act. Accordingly, the Motion to Dismiss is denied as to this claim.

5. <u>**Fraudulent Inducement**</u>

Claims for fraudulent inducement are held to a heightened pleading standard pursuant to Rule 9(b), Fed.R.Civ.P., which

states, "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud." The Eleventh Circuit has commented that Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral or fraudulent behavior." <u>Ziemba v. Cascade Int'l, Inc.</u>, 256 F.3d 1194, 1202 (11th Cir. 2001)(internal citations and quotation marks omitted). Rule 9(b) is satisfied only if the claim sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making it (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

<u>Id.</u> (internal citations and quotation marks omitted).

Perlmutter's counterclaim satisfies each of the Rule 9(b) requirements, except Perlmutter fails to specify the time and place of each misrepresentation. Rule 9(b) requires not only the "who," and "what," but also the "when" and "where" of the alleged fraud. <u>Mizzaro v. Home Depot, Inc.</u>, 544 F.3d 1230, 1237 (11th Cir. 2008). Accordingly, the Court dismisses the

14

counterclaim without prejudice and with leave to amend by May 30, 2012.

### B.   **Motion to Strike Counterclaims**

Perlmutter has asserted various affirmative defenses to Leedom's complaint, which follow: (1) that the complaint fails to state a cause of action and fails to show a violation of the restrictive covenants contained in the offer letter within 50 miles of a location in which Plaintiffs are doing business; (2) that the complaint fails to establish proper venue; (3) that the complaint fails to establish personal jurisdiction over Perlmutter; (4) that the complaint fails to join indispensable parties; (5) that Perlmutter's contractual obligations owed to Leedom were voided due to Leedom's anticipatory breach of the contract; (6) failure of consideration; and (7) "Due to Plaintiffs' conduct in . . . failing to pay consideration and making material misrepresentations . . . to induce Defendant to accept employment, Defendant asserts that the doctrines of estoppel, unclean hands and unconscionability each render the Offer Letter invalid and unenforceable, and each further bars any

relief sought by Plaintiffs." (Doc. # 68 at 5).[2]

A true affirmative defense is "one that admits to the complaint, but avoids liability, wholly, or partly, by new allegations of excuse, justification or other negating matters." <u>Bluewater Trading, LLC v. Willimar USA, Inc.</u>, No. 07-cv-61284, 2008 U.S. Dist. LEXIS 108191, at *2 (S.D. Fla. Sept. 9, 2008). Rule 8(c)(1) includes a list of affirmative defenses, including failure of consideration, accord and satisfaction, estoppel, laches, res judicata, and waiver.

Defenses one, four, and five are not true affirmative defenses. In these affirmative defenses, Perlmutter contends that Leedom's claims fail to state a cause of action, that the Complaint fails to join indispensable parties; and that anticipatory breach of the contract by Plaintiffs voided the contract.  These defenses do not admit the allegations of the Complaint but avoid liability based upon some negating factor. Rather, Perlmutter raises in her affirmative defenses factual and legal issues bearing on the sufficiency of Plaintiffs' Complaint. Nevertheless, this Court is not inclined to strike these defenses. As explained in <u>Ohio National Life Assurance</u>

---

[2] In response to the Motion to Strike, Defendant has withdrawn defenses two and three.

16

Corp. v. Langkau, No. 3:06-cv-290, 2006 U.S. Dist. LEXIS
60062, at *6-7 (M.D. Fla. Aug. 15, 2006):

> In attempting to controvert an allegation in the
> complaint, the defendant occasionally may label his
> negative averment as an affirmative defense rather
> than as a specific denial.   But as long as the
> pleading clearly indicates the allegations in the
> complaint that are intended to be placed in issue,
> the improper designation should not prejudice the
> pleader.    If plaintiff has been given "plain
> notice" of the matters to be litigated which is all
> the federal pleading rules require, he should be
> put to this proof irrespective of any error by
> defendant regarding terminology.    The federal
> courts have accepted the notion of treating a
> specific   denial   that   has   been   improperly
> denominated as an affirmative defense as though it
> was correctly labeled.

Id. (citing 5 Charles Alan Wright & Arthur R. Miller, Federal
Practice and Procedure § 1269 (2d ed. 1991), pp. 409-10).

As defenses one, four, and five attack the merits and
procedural sufficiency of Plaintiffs' Complaint, the Court
determines that these defenses pass muster under the standards
noted above by putting into issue relevant and substantial
legal and factual questions.  Furthermore, the defenses relate
squarely to the controversy, do not confuse the issues, and do
not appear to cause prejudice to any party.   The Court thus
declines to strike defenses one, four and five.

To the extent that Defendant raises failure of

17

consideration and estoppel, such defenses are true affirmative defenses as described in Rule 8(c)(1), Fed.R.Civ.P., and are not subject to being stricken based on Plaintiffs' challenge. In sum, the Court determines that the defenses challenged are not subject to the draconian sanction of being stricken. Thus, the Court denies the Motion to Strike.

Accordingly it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiffs' Joined Motion to Dismiss the Counterclaims for Failure to State a Claim and Strike Affirmative Defenses, (Doc. # 73) is **GRANTED** to the extent that counterclaim five, for fraudulent inducement, is dismissed without prejudice and with leave to amend by May 30, 2012. The Motion is otherwise denied.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of May 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

18